UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

VALERIE SILBERMAN,

       Plaintiff,

-v-                                               Case No. 18-792

LOWE'S HOME CENTERS, LLC,
a North Carolina limited liability company,
and LOWE'S COMPANIES, INC., a
North Carolina corporation, Jointly & Severally,

       Defendants.

_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com

Street Address:
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI  48334
_____/

## Complaint and Demand for Jury Trial

      NOW COMES the plaintiff, Valerie Silberman, by and through her attorneys, The Niskar Law Firm, PLLC, and in support of her complaint against the defendants, hereby states as follows:

-1-

### A.  Statement of Jurisdiction

1.    The plaintiff is a resident of the City of Rockford, County of Kent, State of Michigan.

2.    Defendant, Lowe's Home Centers, LLC (hereafter "LHC"), is a North Carolina limited liability company with its principal place of business located in North Carolina.  LHC conducts business in the State of Michigan on a regular and ongoing basis, specifically including in the County of Kent, State of Michigan.

3.    Defendant, Lowe's Companies, Inc. (hereafter "LCI"), is a North Carolina corporation, with its principal place of business located in North Carolina.  LIC conducts business in the State of Michigan on a regular and ongoing basis, specifically including in the County of Kent, State of Michigan.

4.    As the defendants conduct regular and ongoing business in the County of Kent, State of Michigan, this Honorable Court possesses personal jurisdiction over the defendants and venue is proper pursuant to 28 USC § 1391.

5.    Plaintiff alleges violations of Title VII of the Civil Rights Act, 42 USC § 2000e, *et seq*. Therefore, this Honorable Court possesses original subject matter jurisdiction pursuant to 28 USC § 1331, 28 USC § 1343(4), and 42 USC § 2000e-5.

6.    This Honorable Court possesses supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1367.

7.    The amount in controversy exceeds $75,000.00, exclusive of attorney fees, costs and interest.

8.    Defendant, LCI, is the sole member and owner of defendant, LHC.

9.    Since defendant LCI. is a citizen of North Carolina, the sole member of  defendant LHC (i.e., Lowe's Companies, Inc.) is a citizen of North Carolina, plaintiff is a citizen of Michigan, and the amount in controversy exceeds $75,000.00, this Honorable Court

likewise possesses original subject matter jurisdiction over plaintiff's state law claims pursuant to 28 USC § 1332.

## B.  Factual Allegations

Plaintiff incorporates all prior averments, as if fully set forth herein.

10.   Plaintiff is female.

11.   Plaintiff began her employment with the defendants in November of 2012.  She last worked for the defendants as a Pro Service Specialist at the defendants' Kentwood, Michigan, store location.

12.   Starting on or about October 25, 2016, plaintiff was subjected to sexual harassment by a regular male customer of the defendants, who will be referred to herein as "H.P."  H.P. is believed to develop and/or own various hotels.  H.P. and/or the entities he owns utilize the services of a contractor to perform construction on H.P.'s development projects.  That contractor company is owned by the brother of the store manager of the defendants' Kentwood, Michigan, store location at which plaintiff worked.

13.   The sexual harassment by H.P. included unwelcome and unwanted sexual touching of the plaintiff's buttocks, rubbing up against the plaintiff in a sexual manner, sexual comments, and requests for sexual favors.

14.   The plaintiff reported the sexual harassment to the defendants' human resource manager on October 25, 2016, which was the date on which the sexual harassment started.

15.   Plaintiff again notified the human resource manager of the sexual harassment on October 26, 2016.  Defendants took no action and the sexual harassment continued.

16.   On October 27, 2016, plaintiff notified her direct supervisor about the sexual harassment. Defendants took no action and the sexual harassment continued.

17.   H.P.'s conduct was so open and obvious that plaintiff's co-workers took notice and would

notify the plaintiff if H.P. had entered the store so that plaintiff could go hide in back room areas of the store where H.P. could not see her.

18. In early November 2016, plaintiff again reported the continued sexual harassment to the human resource manager, and likewise provided the human resource manager with proof that H.P. was inappropriately calling and texting the plaintiff.  The defendants took no action, and the sexual harassment continued.

19. On or about November 11, 2016, plaintiff attended a regular team staff meeting at the store location.  An assistant store manager and plaintiff's direct supervisor were present. During this meeting, plaintiff broke down and cried over the sexual harassment by H.P. and the defendants' failure to take prompt and appropriate action to stop it.  A co-worker spoke up and protested the fact that the defendants were not doing anything to stop the problem.  Immediately after this meeting, plaintiff met with the assistant store manager and again reported the harassment and complained that the defendants were not doing anything to stop it.

20. On or about November 15, 2016, plaintiff discussed the harassment with the store manager.

21. On either November 16, 2016 or November 17, 2016, plaintiff met with the store manager to discuss the situation.  The store manager told plaintiff that he would ask the human resource manager to perform a "threat assessment" of H.P.  Nothing was done to stop the harassment.

22. On November 18, 2016, plaintiff and a co-worker were working at their work station in the store.  H.P. called the plaintiff on her cell phone.  Plaintiff did not answer the call.

23. Immediately thereafter the phone at the work station desk rang.  The caller identification notification on the phone disclosed that the caller was H.P.  Plaintiff's co-worker, who was aware of the situation, answered the phone.  H.P. asked to speak with plaintiff.  The

co-worker told H.P. that Plaintiff was at lunch.  H.P. told the co-worker that he (meaning H.P.) knew that plaintiff was not at lunch, and knew that plaintiff was right next to the co-worker because H.P. had someone trailing and watching the plaintiff.  Fearing for her physical safety, plaintiff left the store.

24.    Plaintiff notified her direct supervisor of the situation, and called the store manager. Plaintiff's call to the store manager was transferred to the assistant store manager. Plaintiff notified the assistant store manager of what had occurred that day.  The assistant store manager stated that he would speak with the store manager about the situation when the latter returned from lunch.  Plaintiff heard nothing back from either the assistant store manager, nor the manager.

25.    Plaintiff was next scheduled to work on November 22, 2016.  Plaintiff reported for work and met with her direct supervisor.  Plaintiff's direct supervisor told Plaintiff that he had spoken with the assistant manager about the situation, and that the assistant manager told him that the assistant manager and store manager stated their belief that plaintiff was over-reacting.  Plaintiff's direct supervisor told plaintiff that, per the assistant manager and manager, more was at stake than just losing a customer who spent large amounts of money at the store such as H.P., but that the livelihood of the store manager's brother (i.e., the contractor for H.P.) was also at stake.  Plaintiff's direct supervisor confirmed that defendants were taking no action to stop the harassment, that no threat assessment was done on H.P., and that nothing would be done about the sexual harassment by H.P.

26.    Later that work shift, in plaintiff's presence, an Account Executive for Pro Services stated that he was meeting with H.P. seeking to secure a $300,000.00 deal with H.P., thus further confirming that the defendants were more interested in H.P.'s lucrative business, than complying with their obligations under federal and state sexual harassment laws.

27.    The sexual harassment was severe and/or pervasive and continued over an extended

period of time.

28.     Defendants received actual and constructive notice of the harassment, with actual notice being provided on numerous occasions.

29.     The defendants failed to take prompt and appropriate measures to stop the harassment for approximately one month.

30.     The defendants' failure to take timely and appropriate measures to stop the harassment resulted in the continuation of the harassment and the culmination into the plaintiff's physical safety being put in jeopardy.  Accordingly, Plaintiff was forced to quit on November 22, 2016, and therefore suffered a constructive discharge caused by the defendants.

### C.  Count I – Violations of Title VII of the Civil Rights Act, 42 USC § 2000e, *et seq*. – Sexual Harassment; Hostile Work Environment; *Quid Pro Quo* Sexual Harassment; Constructive Discharge

Plaintiff incorporates all prior averments, as if fully set forth herein.

31.     Plaintiff was an "employee" of the defendants within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq*., (herein referred to as "Title VII")    .

32.     The defendants were, individually and/or collectively, an "employer" of the plaintiff within the meaning of Title VII.

33.     Plaintiff was harassed by the H.P. on the basis of sex and gender through, *inter alia*, unwelcome sexual advances, requests for sexual favors, verbal conduct of a sexual nature, and physical conduct of a sexual nature, as more fully set forth above, which had the purpose and/or effect of unreasonably and substantially interfering with the plaintiff's job and/or in creating an intimidating, hostile, and/or offensive work environment.

34.     Defendants had actual and/or constructive notice of H.P.'s harassment of plaintiff, failed to take timely and appropriate remedial action to stop the harassment, allowed the

harassment to continue, and caused the plaintiff's constructive discharge.

35.    The defendants have violated Title VII, and are liable to plaintiff for, *inter alia*:

   a.    failing to adopt an adequate sexual harassment policy;
   b.    failing to adequately train its employees on proper sexual harassment policies and practices;
   c.    failing to timely and adequately instruct H.P. to refrain from sexually harassing behavior;
   d.    failing to timely and adequately respond to actual and/or constructive notice of H.P.'s sexual harassment of plaintiff;
   e.    allowing H.P. to continue sexually harassing the plaintiff after plaintiff and others made timely and adequate efforts to report and stop the same;
   f.    failing to timely and adequately bar H.P. from entering the store and/or the store grounds;
   g.    failing to timely terminate their relationship with H.P;
   h.    failing to timely and adequately investigate the plaintiff's complaints of sexual harassment;
   i.    failing to timely take reasonable and adequate action to stop the sexual harassment;
   j.    Making plaintiff's submission to the sexual harassment a condition of her employment; and
   k.    constructively discharging the plaintiff from her employment and/or allowing H.P. to constructively discharge the plaintiff.

36.    The defendants' violations of Title VII were done with malice and/or reckless indifference to the plaintiff's rights, thereby subjecting the defendants to punitive damages, in addition to all other damages available at law.

37.    As a direct and proximate result of the above-mentioned sexual harassment, and the defendants' failure to take the required corrective action in a timely manner, plaintiff was forced to terminate her employment relationship with the defendants, and was thus constructively discharged from her employment in violation of Title VII.

38.    As a direct and proximate result of the defendants' violations of Title VII, the plaintiff suffered (both in the past and into the future) emotional distress, mental anguish, pain and suffering, fright, humiliation, shock, fear, embarrassment, and all other non-economic damages available at law.

39.    As a direct and proximate result of the defendants' violations of Title VII, the plaintiff

suffered economic damages (both in the past and into the future) including loss of wages, loss of benefits, back pay, front pay, loss of employability, other expenses, as well as all other economic damages available at law.

40.    Plaintiff is further claiming as damages all costs and attorney fees incurred in having to investigate, pursue, litigate and prosecute this claim pursuant to Title VII.

### D.  Count II – Violation of the Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.,* MSA § 3.548(101), *et seq.* – Sexual Harassment; Hostile Work Environment; *Quid Pro Quo* Sexual Harassment; Constructive Discharge

Plaintiff incorporates all prior averments, as if fully set forth herein.

41.    Plaintiff was an employee of the defendants, individually and/or collectively, within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2102, *et seq*; MSA § 3.548(101), *et seq* (hereafter referred to as the "ELCRA").

42.    The defendants, individually and/or collectively, were each an employer of the plaintiff within the meaning of the ELCRA.

43.    Plaintiff was harassed by the H.P. on the basis of sex and gender through, *inter alia*, unwelcome sexual advances, requests for sexual favors, verbal conduct of a sexual nature, and physical conduct of a sexual nature, as more fully set forth above, which had the purpose and/or effect of unreasonably and substantially interfering with the plaintiff's job and/or in creating an intimidating, hostile, and/or offensive work environment.

44.    Defendants had actual and/or constructive notice of H.P.'s harassment of plaintiff, failed to take timely and appropriate remedial action to stop the harassment, allowed the harassment to continue, and caused the plaintiff's constructive discharge.

45.    The defendants have violated the ELCRA, and are liable to plaintiff for, *inter alia*:

    a.    failing to adopt an adequate sexual harassment policy;
    b.    failing to adequately train its employees on proper sexual harassment policies and practices;

c.    failing to timely and adequately instruct H.P. to refrain from sexually harassing behavior;

d.    failing to timely and adequately respond to actual and/or constructive notice of H.P.'s sexual harassment of plaintiff;

e.    allowing H.P. to continue sexually harassing the plaintiff after plaintiff and others made timely and adequate efforts to report and stop the same;

f.    failing to timely and adequately bar H.P. from entering the store and/or the store grounds;

g.    failing to timely terminate their relationship with H.P;

h.    failing to timely and adequately investigate the plaintiff's complaints of sexual harassment;

i.    failing to timely take reasonable and adequate action to stop the sexual harassment;

j.    Making plaintiff's submission to the sexual harassment a condition of her employment; and

k.    constructively discharging the plaintiff from her employment and/or allowing H.P. to constructively discharge the plaintiff.

46.    The defendants' violations of the ELCRA were done with malice and/or reckless indifference to the plaintiff's rights, thereby subjecting the defendants to exemplary damages, in addition to all other damages available at law.

47.    As a direct and proximate result of the above-mentioned sexual harassment, and the defendants' failure to take the required corrective action in a timely manner, plaintiff was forced to terminate her employment relationship with the defendants, and was thus constructively discharged from her employment in violation of the ELCRA.

48.    As a direct and proximate result of the defendants' violations of the ELCRA, the plaintiff suffered (both in the past and into the future) emotional distress, mental anguish, pain and suffering, fright, humiliation, shock, fear, embarrassment, and all other non-economic damages available at law.

49.    As a direct and proximate result of the defendants' violations of the ELCRA, the plaintiff suffered economic damages (both in the past and into the future) including loss of wages, loss of benefits, back pay, front pay, loss of employability, other expenses, as well as all other economic damages available at law.

50.     Plaintiff is further claiming as damages all costs and attorney fees incurred in having to investigate, pursue, litigate and prosecute this claim pursuant to the ELCRA.

### E.  Satisfaction of Procedural Requirements Applicable to Title VII Claims

Plaintiff incorporates all prior averments, as if fully set forth herein.

51.     Plaintiff has satisfied all procedural prerequisites to commencing this action, including but not limited to, the timely filing of an adequate charge of discrimination with the Equal Employment Opportunity Commission, exhaustion of her administrative remedies, the issuance of a Right to Sue Letter, as well as the timely commencement of this action in relation to issuance of the Right to Sue Letter.

WHEREFORE the plaintiff respectfully prays for judgment against the defendants, jointly and severally, for all compensatory damages, punitive damages, exemplary damages, non-economic and economic damages available at law (both past and into the future), together with costs, interest and attorney fees incurred in having to investigate, pursue, litigate and prosecute the instant action.

<div style="margin-left: 50%;">

Respectfully submitted,

THE NISKAR LAW FIRM, PLLC

By: /s/ Joey S. Niskar
JOEY S. NISKAR (P55480)
Attorney for Plaintiff
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI  48334
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com

</div>

Dated:  July 17, 2018

-10-

UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

VALERIE SILBERMAN,

       Plaintiff,

-v-                                          Case No. 18-792

LOWE'S HOME CENTERS, LLC,
a North Carolina limited liability company,
and LOWE'S COMPANIES, INC., a
North Carolina corporation, Jointly & Severally,

       Defendants.

_____/

JOEY S. NISKAR (P55480)
The Niskar Law Firm, PLLC
Attorney for Plaintiff
P.O. Box 252917
West Bloomfield, MI  48325
(248) 702-6262
E-mail:  joey@wrongfullydischarged.com

_____/

**DEMAND FOR JURY TRIAL**

      NOW COMES the plaintiff, Valerie Silberman, by and through her attorneys, The Niskar

Law Firm, PLLC, and hereby demands a trial by jury on all issues in the case.

                            THE NISKAR LAW FIRM, PLLC

                            By: /s/ Joey S. Niskar_____
                            JOEY S. NISKAR (P55480)
                            Attorney for Plaintiff
                            30445 Northwestern Hwy., Ste. 250
                            Farmington Hills, MI  48334
                            (248) 702-6262
Dated:  July 16, 2018              E-mail:  joey@wrongfullydischarged.com

-11-